1

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9   Jeffrey Scott Allen,                    )    No. CV 07-1264-PHX-NVW (HCE)
                                            )
10              Petitioner,                 )    **REPORT & RECOMMENDATION**
                                            )
11  vs.                                     )
                                            )
12                                          )
    Martin McDaniel; et. al.,               )
13                                          )
                Respondents.                )
14                                          )
                                            )
    _____  )
15

16

17      Pending before the Court is Petitioner Jeffrey Scott Allen's Amended Petition for Writ of

    Habeas Corpus (Doc.No. 25) (hereinafter "Amended Petition") filed pursuant to 28 U.S.C.
18
    § 2254.  Pursuant to the Rules of Practice of this Court, this matter was referred to the
19
    undersigned Magistrate Judge.  For the following reasons the Magistrate Judge recommends
20
    that the District Court deny in part and dismiss in part Petitioner's Petition for Writ of
21
    Habeas Corpus.
22
    **I. BACKGROUND**
23
        A.      Petitioner's Conviction
24
        In February 2001, a grand jury sitting in Maricopa County, Arizona, indicted Petitioner
25
    on seven counts of Sexual Conduct with a Minor, class 2 felonies and dangerous crimes
26
    against children.  (Brief of Petitioner (Doc. No. 25-2) (hereinafter "Petitioner's Brief");
27
    Answer, Ex. A (Doc. No.32-2, pp. 2-3)).  In August 2001, a jury found Petitioner guilty as
28

to Count 7 of the Indictment and not guilty as to the other 6 counts. (Petitioner's Brief; Answer, Ex. A (Doc.No. 32-2, pp.5-11)).

The following is a summary of the pertinent facts drawn from this Court's review of the record.

Counts 6 and 7 of the February 2001 Indictment alleged that Petitioner committed the offenses "on or about the 16th day of November 2000." (Answer, p.2 & Ex. A (Doc. No. 32-2, p.4)). On the first day of trial, the prosecutor moved to amend Counts 6 and 7 to reflect that the charged offenses occurred on November 6, 2000. (Answer, Ex. B, pp. 16-17). The prosecutor argued that the amendment was technical, and pointed out that the police reports and other disclosure provided to Petitioner's counsel indicated November 6. (*Id.* at p.17). Petitioner argued that the amendment was substantive and moved to strike Counts 6 and 7 from the Indictment. (*Id.* at pp. 16-17). The trial court granted the prosecution's motion to amend. (*Id.* at pp.26-27).

In August 2001, the jury found Petitioner guilty on Count 7, pertaining to having vaginal intercourse with the victim, who was a minor under the age of 15, on or about November 6, 2000. (Answer, Ex. A (Doc. No. 32-2, p.11)). The jury found that Petitioner was not guilty of the other six charges. (*Id.* at pp. 5-10). In October 2001, the trial court imposed an aggravated sentence of 22 years. (*Id.* at p.14) The trial court also dismissed Counts 1 through 6. (*Id.*).

B.      Motion to Vacate Judgment and Consolidated Direct Appeal

Thereafter, Petitioner filed a timely notice of appeal from the judgment and sentence. (Answer p.3; Answer, Ex. A (Doc. No. 32-2, p.16)). He also filed a Motion to Vacate Judgment wherein he argued that a new trial was warranted on grounds of newly discovered evidence of juror misconduct based on the fact that two of the jurors commenced a romantic relationship during his trial. (Answer, Ex. A, (Doc. No. 32-2, pp.18-27)). After an evidentiary hearing on the matter, the trial court denied Petitioner's Motion to Vacate Judgment. (Answer, Ex. A (Doc. No. 32-3, p. 28); *see also* Answer, Ex. R). Petitioner filed a timely notice of appeal from the denial of his Motion to Vacate Judgment. (Answer, p.3;

Answer, Ex. A (Doc. No. 32-2, p.29)).  The Arizona Court of Appeals consolidated both appeals at Petitioner's request.  (Answer, Ex. C).

Petitioner, through counsel, raised the following claims in his consolidated appeal:

1.    The Amendment of the Indictment on the day of trial to change the dates of offenses violated Petitioner's right to notice of the charges against him and his right to be free from double jeopardy pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and the Arizona Constitution, Art. 2 §24;

2.    The admission of evidence of Petitioner's drug and alcohol use and his age amounted to fundamental error in violation of the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution and the Arizona Constitution, Art. 2 §4;

3.    The prosecutor's questioning of Petitioner regarding his failure to produce evidence improperly shifted the burden of proof in violation of Petitioner's Due Process rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and the Arizona Constitution, Art. 2 §10;

4.    The court's instruction to the jury in response to its question about unanimous verdicts improperly implied that the court would not accept "[n]on-[u]nanimous [v]erdicts" which interfered with the independent judgment of the jury in violation of Petitioner's rights to an impartial jury under the Sixth Amendment of the United States Constitution and the Arizona Constitution, Art. 2 §24; and

5.    Petitioner's conviction was obtained in violation of the United States Constitution and the Arizona Constitution, Art. 2 §§23, 24 in that he was denied his right under the Due Process Clause of the Fourteenth Amendment to a trial by an impartial jury and a jury that decides a case based solely upon the evidence.

(Answer, Ex. D).

On February 18, 2003, the Arizona Court of Appeals affirmed Petitioner's conviction and sentence. (Answer, Ex. F). Petitioner, through counsel, then filed a Petition for Review by the Arizona Supreme Court wherein he raised the following two claims:

1. The admission of evidence of Petitioner's drug and alcohol use and his age was fundamental error in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and the Arizona Constitution, Art. 2 §4; and

2. Petitioner's conviction was obtained in violation of the United States Constitution and the Arizona Constitution, Art. 2 §§23, 24 in that he was denied his right under the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to a trial by an impartial jury and a jury that decides the case based solely upon the evidence.

(Answer, Ex. G). The Arizona Supreme Court summarily denied review. (Answer, Ex. H).

C. Post-Conviction Relief Proceedings

On August 20, 2003, Petitioner filed a *pro se* Petition for Post-Conviction Relief (hereinafter "PCR Petition") wherein he indicated his claim by marking two boxes on a form petition. (Answer, Ex. I). Petitioner claimed that he was denied his constitutional right to representation by competent counsel. He also claimed "[t]he abridgement of any other right guaranteed by the constitution or the laws of this state, or the constitution of the United States, including a right that was not recognized as existing at trial if retrospective application of that right is required." (*Id.*).

On December 1, 2003, Petitioner, through counsel, filed a Memorandum in Support of Petition for Post-Conviction Relief (hereinafter "PCR Memorandum"). (Answer, Ex. J). Therein, Petitioner raised the following claims:

1. Petitioner "[w]as [d]enied [d]ue [p]rocess of [l]aw [w]hen [h]e [w]as [c]onvicted of a [c]rime for which the [g]rand [j]ury [d]id [n]ot [i]ndict, i.e., [t]he [c]ourt [d]id [n]ot [h]ave [j]urisdiction to [t]ry [h]im...";

2. Petitioner was denied the right to effective assistance of counsel at sentencing;

- 4 -

3.      Petitioner was denied the right to effective assistance of counsel at trial; and

4.      Petitioner was entitled to re-sentencing because of a significant change in the law.

(*Id.*).

The trial court granted the petition in part and denied the petition in part. (Answer, Ex. A (Doc.No. 32-2, pp. 42-43)). In pertinent part, the trial court:

1.      summarily denied Petitioner's claim that he was denied due process because he was convicted of a crime for which the grand jury did not indict and for which the trial court did not have jurisdiction;

2.      found that although Petitioner raised a colorable claim of ineffective assistance of counsel at sentencing warranting a hearing, such hearing was ultimately unnecessary given that the matter would be remanded for re-sentencing in light of a significant change in the law;

3.      summarily denied Petitioner's claim of ineffective assistance of counsel at trial; and

4.      held that there had been a significant change in the law to require re-sentencing.

(*Id.*).

On April 23, 2004, Petitioner, through counsel, filed a petition for review with the court of appeals wherein he raised one claim: "Whether Mr. Allen was convicted of a crime for which he was never indicted?"  (Answer, Ex. L, p.1).  On that same date, Petition filed a "Motion to Stay Consideration of Petition for Review" pending the re-sentencing proceeding. (Answer, Ex. M).  On September 9, 2004, on re-sentencing, the prosecution indicated that in light of *Blakely v. Washington,* 542 U.S. 296 (2004), it was no longer requesting an aggravated sentence. (Answer, Ex. N).  The trial court sentenced Petitioner to a presumptive sentence of 15 years.  (*Id.*).  Thereafter, the Arizona Court of Appeals summarily denied review of Petitioner's Petition for Review with regard to the trial court's denial of Petitioner's claim on post-conviction relief that he was convicted of a crime for which was never indicted.  (Answer, Ex. Q).

# II. PETITIONER'S FEDERAL PETITION FOR WRIT OF HABEAS CORPUS

On June 14, 2006, Petitioner, though counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 in United Stated District Court for the Western District of Texas. (*See* Doc.No.5). The matter was subsequently transferred to the District Court for the District of Arizona and Petitioner, though counsel, subsequently filed the instant Amended Petition and Petitioner's Brief (Doc. Nos. 25, 25-2) wherein he raises the following four grounds for relief:

1.      "[d]enial of Due Process and ineffective [a]ssistance of counsel at trial" (Ground I);

2.      denial of right to an impartial jury in violation of Petitioner's 6th Amendment and Due Process rights (Ground II);

3.      ineffective assistance of counsel at sentencing (Ground III); and

4.      "[t]he admission of evidence at the trial of Mr. Allen's drug and alcohol use, and the age difference were violations of the due process clause of the 5th and 14[th] amendments" (Ground IV).

(Amended Petition).

Respondents contend that Grounds I and III should be dismissed as procedurally defaulted. Respondents also argue that although Grounds II and IV have been exhausted, they lack merit.

Petitioner did not reply to Respondents' arguments.

# III. DISCUSSION

## A.    Standard: Exhaustion and Procedural Default

Respondents argue that habeas review is barred with regard to Grounds One and Three because such claims are procedurally defaulted.

A federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state court remedies available to him  28 U.S.C. § 2254(b); *Baldwin v. Reese,* 541 U.S. 27(2004); *Castille v. Peoples,* 489 U.S. 346 (1989).  The exhaustion inquiry focuses

on the availability of state court remedies at the time the petition for writ of habeas corpus is filed in federal court. *See O'Sullivan v. Boerckel,* 526 U.S. 838 (1999). Exhaustion generally requires that a prisoner provide the state courts an opportunity to act on his claims before he presents those claims to a federal court. *Id.* A petitioner has not exhausted a claim for relief so long as the petitioner has a right under state law to raise the claim by available procedure. *See* Id.; 28 U.S.C. § 2254(c).

A habeas petitioner may exhaust his claims in one of two ways. First, a claim is exhausted when no remedy remains available to the petitioner in state court. *See* 28 U.S.C. § 2254(b)(1)(A). Second, a claim is exhausted if there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the rights of the petitioner. *See* 28 U.S.C. § 2254(b)(1)(B).

To meet the exhaustion requirement, the petitioner must have "fairly present[ed] his claim in each appropriate state court...thereby alerting that court to the federal nature of the claim." *Baldwin,* 541 U.S. at 29; *see also Duncan v. Henry,* 513 U.S. 364, 365-66 (1995). A petitioner fairly presents a claim to the state court by describing the factual or legal bases for that claim and by alerting the state court "to the fact that the...[petitioner is] asserting claims under the United States Constitution." *Duncan,* 513 U.S. at 365-366. *See also Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001) (same). Mere similarity between a claim raised in state court and a claim in a federal habeas petition is insufficient. *Duncan,* 513 U.S. at 365-366.

Furthermore, to fairly present a claim, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845. Once a federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied. *See Picard v. Connor,* 404 U.S. 270, 275 (1971). In habeas petitions, other than those concerning life sentences or capital cases, the claims of Arizona state prisoners are exhausted if they have been fairly presented to the Arizona Court of Appeals either on appeal of conviction or through a collateral proceeding pursuant to Rule 32 of the Arizona Rules of

Criminal Procedure. *Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9ᵗʰ Cir. 1999), *cert. denied* 529 U.S. 1124 (2000).

In some instances a claim can be technically exhausted even though the state court did not address the merits. This situation is referred to as "procedural bar" or "procedural default." A claim is procedurally defaulted if the state court declined to address the issue on the merits for procedural reasons. *Franklin v. Johnson,* 290 F.3d 1223, 1230 (9ᵗʰ Cir. 2002). Procedural default also occurs if the claim was not presented to the state court and it is clear the state would now refuse to address the merits of the claim for procedural reasons. *Id.* The procedural bar provides an independent and adequate state-law ground for the conviction and sentence and, thus, prevents federal habeas corpus review unless the petitioner can demonstrate cause and prejudice for failing to raise the claim in the state proceedings. *Gray v. Netherland,* 518 U.S. 152, 161-162 (1996); *see also Murray v. Carrier,* 477 U.S. 478, 485-495 (1986); *Franklin,* 290 F.3d at 1231. Accordingly, the procedural default doctrine prevents state prisoners from obtaining federal review by allowing the time to run on available state remedies and then rushing to federal court seeking review. *Coleman v. Thompson,* 501 U.S. 722, 731-732 (1991).

If a claim has never been presented to the state court, a federal habeas court may determine whether state remedies remain available.[1] *See Harris v. Reed,* 489 U.S. 255, 263 n.9 (1989); *Franklin,* 290 F.3d at 1231. In Arizona, such a determination often involves consideration of Rule 32 *et seq.* of the Arizona Rules of Criminal Procedure governing post-conviction relief proceedings. For example, Ariz.R.Crim.P. 32.1 specifies when a petitioner may seek relief in post-conviction proceedings based on federal constitutional challenges to convictions or sentences. Under Rule 32.2, relief is barred on any claim which could have

---

[1]Although the Ninth Circuit has suggested that, under Ariz.R.Crim.P. 32.2, there are exceptions to the rule that a district court can decide whether state remedies remain available for claims that require a knowing, voluntary, and intelligent waiver *see Cassett v. Stewart*, 406 F.3d 614 (9ᵗʰ Cir. 2005), *cert. denied,* 546 U.S. 1172 (2006), this Court need not address such waiver because it has not been affirmatively raised by Petitioner. *See Beaty v. Stewart,* 303 F.3d 975, 987 & n.5 (9ᵗʰ Cir. 2002), *cert denied,* 538 U.S. 1053 (2003).

been raised in a prior Rule 32 petition for post-conviction relief, with the exception of certain claims[2] which were justifiably omitted from a prior petition. Ariz.R.Crim.P. 32.2.

In summary, failure to exhaust and procedural default are different concepts. *Franklin*, 290 F.3d at 1230-1231. Under both doctrines, the federal court may be required to refuse to hear a habeas claim. *Id.* The difference between the two is that when a petitioner fails to exhaust, he may still be able to return to state court to present his claims there. *Id.* In contrast, "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show cause and prejudice for the default...the district court dismisses the petition because the petitioner has no further recourse in state court." *Id.* at 1231.

> 1. Grounds One and Three: Ineffective Assistance of Counsel at Trial and at Sentencing

In Ground One, Petitioner sets forth a litany of reasons why trial counsel was ineffective including that counsel: (1) had little trial experience; (2) failed to consult with Petitioner about the facts of the case; (3) met with Petitioner only a few times before trial; (4) failed to advise Petitioner of his options at trial or of his constitutional rights; (5) failed to conduct interviews of men who were allegedly with the victim when the acts relevant to Count 7 occurred; (6) failed to interview other unidentified witnesses; (7) failed to file motions challenging the grand jury proceedings; (8) failed to file motions contesting the admissibility of evidence of other acts; (9) failed to make appropriate objections at trial; (10) failed to take appropriate action when he saw fake identification indicating the victim was over 21; and (11) failed to effectively cross-examine the victim at trial.

---

[2]Such claims include: (1) that the petitioner is being held in custody after his sentence has expired; (2) certain circumstances where newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence; (3) the petitioner's failure to file a timely notice of post-conviction relief was without fault on his part; (4) there has been a significant change in the law that would probably overturn petitioner's conviction if applied to his case; and (5) the petitioner demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found petitioner guilty beyond a reasonable doubt. Ariz.R.Crim.P. 32.2(b) (citing Ariz.R.Crim.P. 32.1(d)-(h)).

With regard to Petitioner's claims of ineffective assistance of counsel at sentencing, Petitioner asserts that counsel: (1) failed to contact Petitioner at any time post-verdict; (2) failed to investigate potential mitigating evidence; and (3) failed to disclose the probation report to Petitioner and failed to prepare Petition for elocution.

It is well-settled that Petitioner must have given the state courts one full opportunity to resolve any constitutional issues. *See O'Sullivan,* 526 U.S. at 845. Petitioner satisfies this requirement by invoking one complete round of the state's established appellate review process. *Id.* Although Petitioner raised in his PCR Petition and PCR Memorandum claims of ineffective assistance of counsel at trial and at sentencing as well as denial of due process regarding ineffective assistance of counsel at trail, Petitioner's Petition for Review filed with the appellate court with regard to the trial court's denial of his PCR Petition raised only one issue: "Whether Mr. Allen was convicted of a crime for which he was never indicted?" (Answer, Ex. L, p.1). That issue related not to allegations of ineffective assistance of trial counsel but, instead, to whether the trial court erred when it permitted amendment of Count 7 to reflect the change in date of the charged offense. (*Id.*). Under such circumstances, Petitioner has failed to fairly present his claims raised in Grounds I and III to the state court. Additionally, Respondents correctly point out that Petitioner has no further recourse before the state court with regard to these claims. *See* Ariz.R.Crim.P. 32.9(c)(2004) (30-day deadline for filing petition for review of trial court's ruling on petition for post-conviction relief); *see also* Ariz.R.Cr.P. 32.2 (2004) (precluding remedy under Rule 32 of a matter that has been finally adjudicated in any previous collateral proceeding). Under such circumstances, Petitioner's claims are procedurally defaulted.

When a petitioner has procedurally defaulted his claims, "federal habeas review of the claims is barred unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Cook v. Schriro,* 538 F.3d 1000, 1025 (9th Cir. 2008)(*quoting Coleman,* 501 U.S. at 750). *See also Franklin,* 290 F.3d at 1231. Generally, "cause" sufficient "to excuse a default exists if the petitioner 'can

show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Id.* at 1027 (*quoting Murray,* 477 U.S. at 488). The "fundamental miscarriage of justice" exception to the procedural default rule is limited to habeas petitioners who can establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 327 (1995) (citation omitted). *See also Murray,* 477 U.S. at 496; *Cook,* 538 F.3d at 1028 (*citing Schlup,* 513 U.S. at 321); *Majoy v. Roe,* 296 F.3d 770, 776-777 (9th Cir. 2002)(analyzing this exception in a non-capital case). "The miscarriage of justice exception is limited to those *extraordinary* cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles,* 541 F.3d 933, 937 (9th Cir. 2008) (emphasis in original), *cert denied,* __ U.S.__, 129 S.Ct. 2060 (2009). "'To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence–that was not presented at trial.'" *Cook,* 538 F.3d at 1028 (*quoting Schlup,* 513 U.S. at 324).

Petitioner herein has neither alleged nor demonstrated cause and prejudice. Nor has Petitioner argued that failure to consider Grounds I and III on the merits may result in a fundamental miscarriage of justice. Petitioner has not presented any evidence that would support a finding that, in light of such alleged errors, the Court cannot have confidence in the finding of guilt or that the alleged errors occurring during his trial have probably resulted in the conviction of someone who was actually innocent of the offense.

Petitioner's Grounds I and III are precluded from habeas review.

B.      Standard of Review: Merits

Pursuant to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), the Court may grant a writ of habeas corpus only if the state court proceeding:

> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett,* 393 F.3d 943, 978 (9th Cir. 2004), *cert. denied* 546 U.S. 963 (2005). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins,* 546 U.S. 333, 342 (2006). In conducting its review, the federal habeas court "look[s] to the last reasoned state-court decision." *Van Lynn v. Farmon,* 347 F.3d 735, 738 (9th Cir. 2003).

Section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the "unreasonable application" test. *See Cordova v. Baca,* 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy,* 331 F.3d 1062, 1067 (9th Cir. 2003) (*citing Williams v. Taylor,* 529 U.S. 362, 413-414 (2000)). Additionally, a state court's decision is "contrary to" Supreme Court case law if "the state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases."[3] *Van Lynn,* 347 F.3d at 738 (*quoting Early v. Packer,* 537 U.S. 3, 8 (2002)). "Whether a state court's interpretation

---

[3]"[T]he *only* definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams,* 529 U.S. at 412...While circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, *Duhaime v. Ducharme,* 200 F.3d 597, 600-01 (9th Cir.1999), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark,* 331 F.3d at 1069 (emphasis in original). *See also Holley v. Yarborough,* 568 F.3d 1091, 1101 (9th Cir. 2009) (*citing Carey v. Musladin,* 549 U.S. 70, 76-77 (2006) ("Circuit precedent may not serve to create established federal law on an issue the Supreme Court has not yet addressed").

of federal law is *contrary* to Supreme Court authority...is a question of federal law as to which [the federal courts]...owe no deference to the state courts." *Cordova,* 346 F.3d at 929 (emphasis in original) (distinguishing deference owed under the "contrary to" test of section (d)(1) with that owed under the "unreasonable application" test).

Under the second test, "'[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle...but unreasonably applies that principle to the facts of the prisoner's case.'" *Van Lynn*, 347 F.3d at 738 (*quoting Clark,* 331 F.3d at 1067). Under the "'unreasonable application clause...a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly....Rather that application must be objectively unreasonable.'" *Clark,* 331 F.3d at 1068 (*quoting Lockyer v. Andrade,* 538 U.S. 63 (2003)) (internal quotation marks and citation omitted). When evaluating whether the state court decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law...." *Cordova,* 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert,* 393 F.3d at 978; *see also Taylor v. Maddox,* 366 F.3d 992, 999 (9th Cir.), *cert. denied* 534 U.S. 1038 (2004) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable.") Section (d)(2) "applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence,...that the process employed by the state court is defective,...or that no finding was made by the state court at all." *Taylor,* 366 F.3d at 999 (citations omitted). When examining the record under section 2254(d)(2), the federal court "must be particularly

deferential to our state court colleagues... [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert,* 393 F.3d at 972 (*quoting Taylor,* 366 F.3d at 1000) (emphasis and bracketed text in original). Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, i.e., evidence presented for the first time in federal court."[4] *Taylor,* 366 F.3d at 1000. *See also* 28 U.S.C. section 2254(e).

Both section 2254(d)(1) and (d)(2) may apply where the petitioner raises issues of mixed questions of law and fact. Such questions "receive similarly mixed review; the state court's ultimate conclusion is reviewed under [section] 2254(d)(1), but its underlying factual findings supporting that conclusion are clothed with all of the deferential protection ordinarily afforded factual findings under [sections] 2254(d)(2) and (e)(1)." *Lambert,* 393 F.3d at 978.

### 1.     Ground II: Denial of Right to an Impartial Jury

Petitioner contends that his Sixth Amendment and Due Process rights were violated because he was denied the right to an impartial jury. According to Petitioner, two jurors developed a romantic relationship during trial and their relationship improperly influenced

---

[4]Under section 2254(e) "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The "AEDPA spells out what this presumption means: State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error....Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state-court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." *Taylor,* 366 F.3d at 1000.

their decision.  Respondents acknowledge that Petitioner has exhausted this claim.  (Answer, p.18).  However, they contend that the claim lacks merit.

a.    State Court Proceedings

Petitioner initially raised the issue on a Motion to Vacate Judgment.  (Answer, Ex. A). Petitioner submitted affidavits from the subject jurors indicating that their relationship "may" have influenced their decisions.  (*See* Answer, Ex. A, (Doc.No. 32-2, pp. 21, 22)).  In their affidavits, the jurors also discussed other aspects of the deliberative process apart from their relationship.  (*Id.*).

The trial court held an evidentiary hearing on the matter where both jurors testified.  (*See* Answer, Ex. R).  Both jurors described how their relationship developed during the trial. (*Id.*). They testified that during the trial they did not discuss the case with each other outside deliberations, other than a general conversation on the last day of deliberations regarding how difficult it was to persuade the other jurors to agree with their position. (*Id.*).  Both testified that they felt their decision was influenced by their relationship. (*Id.*).  Each testified that when they were polled,  each answered that these were their true verdicts. (*Id.*).

With "the luxury of time..." after  the trial, the male juror (hereinafter "D.F.") "had a difficult time realizing how I could have come to that conclusion [*i.e.* the verdict] in some ways..." (Answer, Ex. R, p.11).  He also stated that the relationship may have caused him to rush to judgment. (*Id.*)  However, during deliberations he did consider the evidence that was submitted at trial.  (*Id.* at p.13).  He  brought the matter to the attention of Petitioner's counsel because he "wanted to see if there was something, some issue that maybe I felt may have clouded my judgment that I wasn't aware [sic] at the time." (*Id.* at p.11).

The female juror (hereinafter "G.W.") testified that the fact that the D.F. voted in a certain way influenced her vote.  (*Id.* at p. 17) She voted in order to conclude the proceedings and "to go along" with D.F.  (*Id.*).  Had she not been romantically involved with D.F., she would not have voted the way she did. (*Id.*)

G.W. also attended Petitioner's sentencing. (*Id.* at p.19). She did not approve of the 22-year sentence imposed and would have liked for Petitioner to have received a shorter

- 15 -

sentence. (*Id.* at pp. 21-22). However, even before sentencing, she did "not feel[] at peace about the decision..." to convict. (*Id.* at p.22). Although D.F. did not attend the sentencing, he was made aware of Petitioner's sentence. (*Id.* at p.21). Approximately one month after Petitioner's sentencing, G.W. and D.F. informed Petitioner's defense counsel about their relationship and misgivings concerning the verdict. (*Id.* at pp. 18-19).

The trial court denied Petitioner's motion as follows:

> What I have heard from the jurors is that they did follow their oath. They did consider the evidence. Even in the personal contact outside the courtroom they didn't discuss the case.
> So, I heard no misconduct in this case. Whether someone pressured one another or not, I think jurors pressure each other all the time to reach verdicts. That is what deliberations are about, and that is what we're not supposed to inquire into, and we now heard it, and I don't find that it changes the outcome here at all.
> I don't find any juror misconduct sufficient to warrant setting aside this judgment, or if it had been granted, a new trial, I don't see anything here that falls under any of the categories here either, had it been filed earlier.

(*Id.* at pp. 25-26).

Petitioner raised the issue on direct appeal. The appellate court, after setting out a thorough summary of the jurors' affidavits and testimony before the trial court, affirmed the trial court's ruling. (Answer, Ex. F). The appellate court pointed out that D.F. "did not allege that [G.W.] purposefully attempted to persuade him to vote in any particular manner." (Answer, Ex. F, p.16). Nor did G.W. "allege that [D.F.] purposefully attempted to influence her vote." (*Id.*). In affirming the trial court, the appellate court stated in pertinent part:

> "[A] juror's testimony is not admissible to impeach the verdict." [*State v.*] *Dickens,* 187 Ariz. [1] at 15, 926 P.2d [468] at 482 [(1996)]. "No testimony or affidavit shall be received which inquires into the subjective motives or mental processes which led a juror to assent or dissent from the verdict." Ariz.R.Crim.P. 24.1(d); *see also State v. Walker,* 181 Ariz. 475, 483-84, 891 P.2d 942, 950-51 (App. 1995). The only exception is if a juror engages in one of the six specific types of juror misconduct found in Rule 24.1(c)(3). *Dickens,* 187 Ariz. at 15, 926 P.2d at 482.
> We find the jurors were not guilty of any of the misconduct identified in Rule 24.1.[5] The defendant's arguments, as well as those of the jurors, distill into the simple

---

[5]The version of Rule 24.1 in effect at the time of the charged offenses and Petitioner's first sentencing procceding provided in pertinent part:

The court may grant a new trial...for any of the following reasons...
***
(3) A juror or jurors have been guilty of misconduct by:

assertion that they made the wrong decision for the wrong reason–they wanted to hurry up and get out of there. While perhaps improper, this did not constitute "juror misconduct" within the meaning of Arizona law.

The affidavits and testimony are an exposition of subjective thoughts and feelings, the reason for those thoughts and feelings, and how they allegedly influenced the jurors' votes. Absent any recognized form of actual juror misconduct, such information may not be used to impeach the verdict. We will not delve into the "subjective motives or mental processes" that allegedly led these two jurors to reach their verdict. Ariz.R.Crim.P. 24.1(d). To permit such inquiry under the guise of a post-verdict determination of the fairness and impartiality of jurors would permit inquiry into a limitless variety of pressures, concerns, beliefs, and influences to which virtually every juror is subject every day. We will not do so. We find no error.

(*Id.* at pp. 17-18).

The Arizona Supreme Court summarily denied review of the appellate court's decision.

(Answer, Ex. H).

b.    Analysis

Because the Arizona Supreme Court summarily denied Petitioner's Petition for Review, the appellate court decision herein is the "last reasoned state-court decision" for purposes of the federal habeas review. *See Van Lynn,* 347 F.3d at 738. In ruling, the Arizona appellate court cited Arizona case law and Ariz.R.Crim.P. 24.1. The U.S. Supreme Court has held that the state courts are not required to cite U.S. Supreme Court cases nor are they required

_____

(i) Receiving evidence not properly admitted during the trial;
(ii) Deciding the verdict by lot;
(iii) Perjuring himself or herself or willfully failing to respond fully to a direct question posed during the voir dire examination;
(iv) Receiving a bribe or pledging his or her vote in any other way;
(v) Becoming intoxicated during the course of the deliberations; or
(vi) Conversing before the verdict with any interested party about the outcome of the case...
Ariz.R.Crim.P. 24.1(c)(3)(1998) (amended 2002, 2003). Additionally,
Whenever the validity of a verdict is challenged under Rule 24.1(c)(3), the court may receive the testimony or affidavit of any witness, including members of the jury, which relates to the conduct of a juror, official of the court, or third person. No testimony or affidavit shall be received which inquires into the subjective motives or mental processes which led a juror to assent or dissent from the verdict.
Ariz.R.Crim.P. 24.1(d) (1998) (amended 2002, 2003).

- 17 -

to have an *"awareness* of our cases so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early,* 537 U.S. at 8 (emphasis in original). Thus, federal courts are to examine whether the standard actually applied is contrary to clearly established Supreme Court precedent. *Id.* at 11.

The Supreme Court has recognized that the right to a jury trial under the Sixth Amendment "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Irvin v. Dowd,* 366 U.S. 717, 722 (1961). *See also Tanner v. United States,* 483 U.S. 107, 126 (1987), *superseded on other grounds* by 28 U.S.C. § 2254, (*quoting Jordan v. Massachusetts,* 225 U.S. 167, 176 (1912)) ("This Court has recognized that a defendant has a right to a 'tribunal both impartial and mentally competent to afford a hearing.'" ). However, the Supreme Court has also recognized that "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips,* 455 U.S. 209, 217 (1982).

The Supreme Court has, with few exceptions, adhered to the "the near-universal and firmly established common-law rule in the United States flatly prohibit[ing] the admissibility of juror testimony to impeach a jury verdict." *Tanner,* 483 U.S. at 117, 119-121; *see also TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 476 (1993) ("By tradition and necessity, the circumstances in which jurors may impeach their own verdict are quite limited"). Strong policy reasons underlie this rule:

> "[L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation-to the destruction of all frankness and freedom of discussion and conference."

*Tanner* 483 U.S. at 119-120 (*quoting McDonald v. Pless,* 238 U.S. 264, 267-268 (1915)). Exceptions to the rule have been "recognized only in situations in which 'extraneous influence'...was alleged to have affected the jury." *Id.* at 117(*quoting Mattox v. United*

*States,* 146 U.S. 149 (1892)) (internal citation omitted).  When discussing application of the rule by the lower courts, the *Tanner* Court has described the test as an "external/internal distinction..." that is "based on the nature of the allegation."  *Id.*

Where allegations of "extrinsic influence or relationships have..." been made, *Id.* at 120, "the remedy... is a hearing in which the defendant has the opportunity to prove actual bias." *Smith,* 455 U.S. at 215.  Thus, the Supreme Court has permitted inquiry into extraneous influences on jurors concerning: whether jurors heard and read prejudicial information not admitted into evidence, *Mattox,* 146 U.S. at 14; and the influence on jurors by outsiders, *Turner v. State of Louisiana,* 379 U.S. 466 (1965) (association between jurors and two key prosecution witnesses), *Parker v. Gladden,* 385 U.S. 363 (1966) (bailiff's comments about defendant),  *Remmer v. United States,* 347 U.S. 227 (1954) (bribe offered to juror); *Smith,* 455 U.S. 209 (juror's pending employment application with prosecutor's office during trial).

The Supreme Court has declined to require inquiry or consideration of evidence with regard to the internal processes of the jury.  *Tanner,* 483 U.S. 107.  The *Tanner* Court quoted with approval a lower court's decision that:

> "The quickness with which jury findings will be set aside when there is proof of tampering or *external* influence,...parallel the reluctance of courts to inquire into jury deliberations when a verdict is valid on its face....Such exceptions support rather than undermine the rationale of the rule that possible *internal* abnormalities in a jury will not be inquired into except 'in the gravest and most important cases.'"

*Id.* at 118-119 (*quoting United States v. Dioguardi,* 492 F.2d 70, 79 n.12 (2d. Cir. 1974) (*quoting McDonald,* 238 U.S. at 269)).

The *Tanner* Court also observed that

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. *e.g., Government of Virgin Islands v. Nicholas*, *supra*, [759 F.2d] at [1073], 1081 [(1985)] (one year and eight months after verdict rendered, juror alleged that hearing difficulties affected his understanding of the evidence). Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct. *See* Note, Public Disclosures of Jury Deliberations, 96 Harv.L.Rev. 886, 888-892 (1983).

*Id.* at 120-121. Thus, in *Tanner*, the Supreme Court found no error where the trial court declined to permit juror testimony in order to inquire into allegations that jurors drank alcohol during the lunch recess and used illegal substances during the trial. The *Tanner* Court found that such allegations did not fall within the exception to rule: "However severe their effect and improper their use, drugs or alcohol voluntarily ingested by a juror seems no more an 'outside influence' than a virus, poorly prepared food, or a lack of sleep." *Id.* at 122.

Respondents herein argue that "[i]n the same vein [as *Tanner*], the effect of the burgeoning romantic relationship on the jurors' mental processes during the deliberations is a *subjective internal influence* that cannot be heard to impeach the verdict. Petitioner's Sixth Amendment right to trial by an impartial jury was not violated thereby."[6] (Answer, p.19).

Petitioner was afforded an evidentiary hearing on his claim. Upon consideration of the evidence and the trial court's denial of Petitioner's claim, the appellate court pointed out that the subject jurors did not allege that the other purposely attempted to influence that juror's vote. Instead, the two jurors alleged personal misgivings in hindsight about why they now felt they made the wrong decision. The state court aptly described the jurors' affidavits and testimony as "an exposition of subjective thoughts and feelings, and how they allegedly influenced the jurors' votes" and pointed out the appropriate policy concerns prohibiting inquiring into such "subjective motives or mental processes":

> To permit such an inquiry under the guise of a post-verdict determination of the fairness and impartiality of jurors would permit inquiry into a limitless variety of pressures, concerns, beliefs, and influences to which virtually every juror is subject every day.

(Answer, Ex. F, p. 18).

Given the Supreme Court's decisions permitting juror testimony to impeach a verdict only when such testimony involves "outside influences", it cannot be said on this record that the Arizona court's ruling was contrary to, or an unreasonable application of, clearly established

---

[6]Arizona has codified the rule prohibiting juror testimony to impeach a verdict except in limited circumstances including inquiry into allegations of misconduct by reason of intoxication during the course of the deliberations. *See supra* n.5.

Federal law as determined by the United States Supreme Court. Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented.

### 2. Admission of Evidence of Petitioner's Drug and Alcohol Use and Age

Petitioner argues that admission of evidence at trial of his drug and alcohol use, and the age difference between himself and the victim violated his due process rights under the Fifth and Fourteenth Amendments. Respondents acknowledge that Petitioner has exhausted this claim. (Answer, p.19). However, they contend that the claim lacks merit.

### a. State Court Proceedings

Petitioner argued on direct appeal that admission of his "[d]rug and [a]lcohol [u]se, and [his]...[a]ge [a]mount to [f]undamental [e]rror in [v]iolation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and the Arizona Constitution Art. 2 §4." (Answer, Ex. D, p.11). Petitioner conceded that because he did not object to such evidence at trial, his claim on appeal was limited to fundamental error review. The appellate court ruled as follows in pertinent part:

> The record reflects that on direct examination, the defendant testified about his age, his past drug use, and how he had provided drugs to the victim and had used drugs with her. Further, the defendant made no objection to any of this evidence when it was introduced by the State. The defendant's only objection was made to a portion of a tape of a confrontation call between the victim and the defendant, which the trial court sustained. The jury was instructed to disregard that portion of the tape. The defendant, however, contends that the admission of the remainder of this evidence constituted fundamental error.
> "A party must make a specific and timely objection at trial to the admission of certain evidence in order to preserve that issue for appeal." *State v. Hamilton,* 177 Ariz. 403, 408, 868 P.2d 986, 991 (App. 1993). A failure to raise an issue at trial waives all but fundamental error. *State v. Gendron,* 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991). "Fundamental error is that which is 'clear, egregious, and curable only via a new trial.'" *State v. Hughes,* 193 Ariz. 72, 86, ¶62, 969, P.2d 1184, 1198 (1998) (*quoting Gendron,* 168 Ariz. at 155, 812 P.2d at 628). It is also "error going to the foundation of the case, error that takes from defendant a right essential to his defense, and error of such magnitude that defendant could not possibly have received a fair trial." *Id.* (*quoting State v. Bible,* 175 Ariz. 549, 572, 858 P.2d 1152, 1175 (1993)). In our determination of whether error is fundamental, we consider the entire record and the totality of the circumstances. *Id.*
> Arguably the evidence of drug and alcohol use was intrinsic. Evidence is 'intrinsic' when it is 'inextricably intertwined' with evidence of the crime charged. *State v. Nordstrom,* 200 Ariz. 229, 248, ¶56, 25 P.3d 717, 736 (2001) (*quoting State v. Dickens,* 187 Ariz. 1, 18 n.7, 926 P.2d. 468, 485 n.7 (1996)). The victim often associated her contacts with the defendant and their alleged sexual activities with

associated drug or alcohol use. While the defendant's age is of questionable relevance, it has little bearing when considered in the context of fundamental error review. Assuming that the evidence of drug or alcohol use was intrinsic and that the defendant's age was relevant, we fail to see how the admission of any of this evidence rose to the level of fundamental error, especially in light of the defendant's acquittal of six of seven counts.

(Answer, Ex. F, pp. 6-7).

### b. Analysis

In his Amended Habeas Petition, Petitioner argues that the admission of evidence at trial regarding his drug and alcohol use and the age difference between himself and the victim violated his due process rights. Specifically, Petitioner asserts that "[t]here is repeated reference to the fact that he was 28 years of old." (Petitioner's Brief, (Doc.No. 25-2, p.20)). He also refers to testimony that "they went with Mr. Allen to 'where he delivered drugs.' [The victim]...testified that he introduced her to 'crystal meth.' The medical reports introduced into evidence referenced his drug use. In a recorded taped conversation, evidence [sic] involving Mr. Allen's admission to drug use and a drug arrest."[7] (*Id.* at p.19).

Respondents argue that "[h]abeas relief is not available on Petitioner's claim because it involves the admissibility of evidence pursuant to state law and therefore does not form the basis for habeas relief under section 2254." (Answer, p.19) (citations omitted). "Clearly established federal law holds that 'federal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers,* 497 U.S. [764] at 780 [(1990)], and that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions,' *Estelle v. McGuire,* 502 U.S. 62, 67 (1991))." *Adams v. Schriro,* 2007 WL 973959, *19 (D. Ariz.

---

[7]Petitioner omits from his Amended Petition that the trial court sustained a defense objection with regard to portions of the tape and directed the prosecutor to delete the references to Petitioner's drug use and arrest on drug charges. (Answer, Ex.D, p.4) The trial court then instructed the jury to

> disregard the portions of the tape you listened to so far. There was a particular reference in there to drug usage by the defendant. That's been stricken from the record as it relates to what was stated on the tape, and you are to disregard it completely, and not consider it for anything that relates to this case.

(*Id.* (*quoting* August 23, 2001 trial record, p.51); *see also* Answer, Ex. E, p.4 n.1; Answer, Ex. F, p.6).

March 30, 2007); *see also Jammal v. Van de Kamp,* 926 F.2d 918, 919 (9th Cir. 1991). Thus, a federal habeas court is prohibited from reviewing whether "other act" evidence "was properly admitted by the state trial court pursuant to Arizona Rule of Evidence 404(b), which is simply a matter of state evidentiary law." *Adams,* 2007 WL 973959 at *27. Instead, a state trial court's admission of evidence under state evidentiary law will form the basis for federal habeas relief only where the evidentiary ruling "so fatally infected the proceedings as to render them fundamentally unfair" in violation of the petitioner's due process rights. *Jammal,* 926 F.2d at 919; *see also Kealohaupauole v. Shimoda,* 800 F.2d 1463, 1465 (9th Cir. 1986) (whether or not the admission of evidence is contrary to a state rule of evidence, a trial court's ruling does not violate due process unless the evidence is "of such quality as necessarily prevents a fair trial."); *Holley,* 568 F.3d at 1101 ("The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process.") (citation omitted).

The U.S. Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States,* 493 U.S. 342, 352 (1990). Pursuant to this definition, the Supreme Court has declined to hold that evidence of other crimes or bad acts "so infused the trial with unfairness as to deny due process of law." *Estelle,* 502 U.S. at 75 & n.5 (noting that the Court "express[ed] no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). *See also Spencer v. Texas,* 385 U.S. 554, 563-564 (1967) (rejecting argument that due process requires the exclusion of prejudicial evidence). In sum, "[t]he Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process." *Holley,* 568 F.3d at 1101. Moreover, as the Ninth Circuit recently noted, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance

1  of the writ.  Absent such 'clearly established Federal law,' we cannot conclude that the state

2  court's ruling was an 'unreasonable application'"  *Id. (citing Musladin,* 549 U.S. at 77).[8]

3      The essence of Petitioner's claim is that admission of evidence concerning his age and

4  drug and alcohol use was irrelevant and/or "inherently prejudicial" so as to render his trial

5  fundamentally unfair in violation of due process.  (Amended Petition, p.19).  As set forth in

6  *Holley,* Petitioner's claim is foreclosed in light of the fact that there is no clearly established

7  Federal law "ruling that admission of irrelevant or overtly prejudicial evidence constitutes

8  a due process violation sufficient to warrant issuance of the writ."  *Holley,* 568 at 1101.

9  Thus, this Court cannot conclude that the state court's ruling on this issue was either contrary

10  to, or an "unreasonable application" of, clearly established Federal law.  *Id.*  Nor has there

11  been any argument or showing that the state court's decision was based on an unreasonable

12  determination of the facts in light of the evidence presented.

13  **III.        CONCLUSION**

14      For the reasons set forth above, Petitioner's claims of denial of his right to an impartial

15  jury in violation of the Sixth Amendment (Ground II) and improper admission of evidence

16  in violation of the due process clause of the Fifth and Fourteenth Amendments (Ground IV)

17  are without merit and should be denied.  Additionally, Petitioner's claims of  ineffective

18  assistance of trial and appellate counsel (Grounds I and III respectively) are procedurally

19  defaulted and barred from federal habeas review because Petitioner cannot excuse his

20  procedural default.  Therefore, Grounds I and III should be dismissed.

21

22

_____

23      [8]The *Holley* court denied the petitioner's claim with regard to admission of evidence
of pornographic materials involving children even though under Ninth Circuit precedent
24  admission of such evidence would have "resulted in a trial that was fundamentally unfair and
would warrant issuance of the writ...."  *Holley,* 568 F.3d at 1101 n.2.  The *Holley*  court so
25  ruled because of the "strict standards of AEDPA..." together with the lack of clearly
established Federal law with regard to admission of irrelevant or overtly prejudicial evidence.
26  *Id.* at 1101 & n.2 (recognizing that "in cases where the Supreme Court has not adequately
addressed a claim, this court cannot use its own precedent to find a state court ruling
27  unreasonable.").

28

## IV.     RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court deny in part and dismiss in part Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. No. 25).

Pursuant to 28 U.S.C. §636(B), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: **CV 07-1264-PHX-NVW.**  A party may respond to another party's objections within ten days after being served with a copy thereof.  *See* Fed.R.Civ.P. 72(b).

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived.  *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 27th day of July, 2009.


_____
Héctor C. Estrada
United States Magistrate Judge